**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**UTICA DIVISION**

| | |
|---|---|
| BILLYJOE BROWNING, Individually and for Others Similarly Situated <br><br> v. <br><br> BASSETT HEALTHCARE NETWORK | **Case No.** 6:23-cv-01514 (LEK/ATB) <br><br> Jury Trial Demanded <br><br> FLSA Collective Action <br> Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      BillyJoe Browning ("Browning") brings this class and collective action to recover unpaid wages and other damages from Bassett Healthcare Network ("Bassett").

2.      Bassett employed Browning as one of its Patient Care Employees (as defined below) in New York.

3.      Specifically, Browning worked for Bassett as an Environmental Services Tech ("EVS") and, later, a Certified Nursing Assistant ("CNA") at Bassett Medical Center in Cooperstown, New York.

4.      Browning and the other Patient Care Employees regularly worked more than 40 hours in a week.

5.      But Bassett did not pay them for all the hours they worked.

6.      Instead, Bassett automatically deducted 30 minutes a day from Browning's and the other Patient Care Employees' recorded work time for so-called "meal breaks."

7.      Browning and the other Patient Care Employees were thus not paid for that time.

8.      But Browning and the other Patient Care Employees did not actually receive *bona fide* meal breaks.

9.    Instead, Bassett required Browning and its other Patient Care Employees to remain on-duty and perform compensable work throughout their shifts, and Bassett continuously subjected them to work interruptions during their unpaid "meal breaks."

10.    Bassett's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") and the New York Wage Labor Law ("NYLL") and its implementing regulations ("NYCRR") by depriving Browning and the other Patient Care Employees of overtime wages for all overtime hours worked.

JURISDICTION & VENUE

11.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.    This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13.    This Court has general personal jurisdiction over Bassett because Bassett is a domestic corporation.

14.    Venue is proper because Bassett is headquartered in Cooperstown, Otsego County, New York, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

PARTIES

15.    Browning worked for Bassett as an EVS and, later, a CNA at Bassett Medical Center in Cooperstown, New York from approximately January 2023 until March 2023.

16.    Throughout her employment, Bassett classified Browning as non-exempt and paid her on an hourly basis.

17.    Throughout her employment, Bassett subjected Browning to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

2

18.   But throughout her employment, Browning did not actually receive *bona fide* meal breaks.

19.   Browning brings this class and collective action on behalf of herself and other similarly situated hourly, non-exempt patient care employees who were also subject to Bassett's automatic meal break deduction policy.

20.   Bassett automatically deducts 30 minutes a day from these patient care employees' recorded work time for so-called "meal breaks."

21.   But these patient care employees do not actually receive *bona fide* meal breaks.

22.   Thus, Bassett uniformly deprives these patient care employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA and the NYLL.

23.   The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt Bassett employees who received a meal period deduction at any time during the past 3 years (the "FLSA Collective Members").**

24.   Browning also seeks to represent a class under the NYLL pursuant to FED. R. CIV. P. 23.

25.   The New York Class of similarly situated employees is defined as:

> **All hourly, non-exempt Bassett employees in New York who received a meal period deduction at any time during the past 6 years and 228 days[1] from the filing of this Complaint until final resolution of this Action (the "New York Class Members").**

26.   The FLSA Collective Members and the New York Class Members are collectively referred to as the "Patient Care Employees."

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive orders tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

27.     Bassett is a New York non-profit corporation that maintains its principal office in Cooperstown, New York.

28.     Bassett may be served through its President and CEO: **Dr. Tommy Ibrahim, One Atwell Road, Cooperstown, New York 13326,** or wherever he may be found.

### FLSA COVERAGE

29.     At all relevant times, Bassett was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30.     At all relevant times, Bassett was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

31.     At all relevant times, Bassett was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, medical tools and devices, and personal protective equipment—that have been moved in or produced for commerce.

32.     At all relevant times, Bassett has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

33.     At all relevant times, Browning and the other Patient Care Employees were Bassett's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

34.     At all relevant times, Browning and the other Patient Care Employees were engaged in commerce or in the production of goods for commerce.

35.     Bassett uniformly deducted 30 minutes a day from Browning's and the other Patient Care Employees' wages for meal breaks, even when they did not actually receive *bona fide*, uninterrupted meal breaks.

36.     As a result, Bassett failed to pay Browning and the other Patient Care Employees for this compensable work, including overtime, in violation of the FLSA.

37.     Bassett's uniform auto-deduct policy, which deprives Browning and the other Patient Care Employees of overtime wages for all hours worked over 40 in a workweek, therefore, violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

38.     Bassett bills itself as "is an integrated health system that provides care and services to people living in a 5,600 square mile region in upstate New York[:]"[2]



39.     To meet its business objectives, Bassett hires patient care workers, like Browning and the other Patient Care Employees, to work in its healthcare facilities.

---

[2]     https://www.bassett.org/sites/default/files/2022-08/Bassett_Annual_Report_2021.pdf   (last visited November 24, 2023).

40.     Indeed, Bassett owns and/or operates all the healthcare facilities where Browning and the other Patient Care Employees work.

41.     Bassett controls and dictates Browning's and the other Patient Care Employees' rates and methods of pay.

42.     Bassett maintains control, oversight, and direction over Browning and the other Patient Care Employees, including the promulgation and enforcement of policies affecting the payment of wages (including overtime compensation), meal breaks, timekeeping, performance standards, and other employment policies.

43.     Bassett maintains control, oversight, and direction of Browning and the other Patient Care Employees, including, but not limited to, hiring, firing, disciplining, and other employment practices.

44.     Bassett has the authority to hire, fire, and discipline Browning and the other Patient Care Employees.

45.     Indeed, Bassett dictates the hiring standards and all other employment policies and practices in place at its various healthcare facilities where Browning and the other Patient Care Employees work.

46.     For example, all Bassett employees, including Browning and the other Patient Care Employees, must adhere to Bassett's uniform Code of Conduct,[3] regardless of their assigned Bassett healthcare facility.

47.     And to work at any Bassett healthcare facility, Browning and the other Patient Care Employees are required to apply for employment through Bassett's centralized hiring system.

---

[3] https://www.bassett.org/sites/default/files/2023-05/Bassett_Healthcare_Network_Code_of_Conduct_2023_v2.pdf (last visited November 24, 2023).

48.     Bassett controls Browning's and the other Patient Care Employees' work schedules and assignments.

49.     Bassett controls Browning's and the other Patient Care Employees' patient care work.

50.     Bassett requires Browning and the other Patient Care Employees to follow Bassett's uniform and system-wide policies, procedures, and specifications.

51.     Browning's and the other Patient Care Employees' patient care work must strictly adhere to the uniform and system-wide quality standards put in place by Bassett.

52.     Bassett prohibits Browning and the other Patient Care Employees from varying their job duties outside its uniform guidelines and expectations, and Bassett requires these patient care employees to follow its uniform policies, procedures, and directives.

53.     Bassett's facilities have common ownership, management, and/or a centralized human resources department.

54.     Indeed, Bassett has a centralized leadership team that oversees operations at all its various healthcare facilities.[4]

55.     Without Browning and the other Patient Care Employees, Bassett would not be able to complete its business objective of operating healthcare facilities across upstate New York.

56.     Indeed, Browning's and the other Patient Care Employees' work is integral to Bassett's core business of operating healthcare facilities across upstate New York.

57.     Browning and the other Patient Care Employees rely on Bassett for work and compensation.

58.     Browning and the other Patient Care Employees do not substantially invest in the tools, materials, and equipment required to complete their patient care jobs.

---

[4]     *See* https://www.bassett.org/about-us/bassett-healthcare-network-leadership   (last   visited November 24, 2023).

59.     Rather, Bassett incurs the large-scale business and operating expenses like payroll, marketing, facilities, medical tools and equipment, etc. that Browning and the other Patient Care Employees need to perform their patient care work.

60.     Bassett sets Browning and the other Patient Care Employees' work schedule, which necessarily prohibits them from working other jobs while working for Bassett.

61.     Bassett maintains employment records for Browning and the other Patient Care Employees.

62.     In sum, Browning and the other Patient Care Employees are Bassett's employees.

63.     Bassett uniformly classifies Browning and the other Patient Care Employees as non-exempt and pays them on an hourly basis.

64.     While exact job titles and precise job duties may differ, Browning and the other Patient Care Employees are subjected to the same or similar illegal pay practices for similar work.

65.     For example, Browning worked for Bassett as an EVS and, later, a CNA at Bassett Medical Center in Cooperstown, New York from approximately 2020 until March 2023

66.     As an EVS and CNA, Browning primary responsibilities included providing direct patient care to patients at Bassett Medical Center, such as assessing patients, overseeing and monitoring patients, checking vitals, charting patients' treatments, responding to any emergencies, and generally assisting doctors and other patient care staff.

67.     Throughout her employment, Bassett classified Browning as non-exempt and paid her on an hourly basis.

68.     Throughout her employment, Bassett subjected Browning to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

69.     But throughout her employment, Browning did not actually receive *bona fide* meal breaks.

70.     Browning and the other Patient Care Employees perform their jobs under Bassett's supervision and use materials, equipment, and technology Bassett approves and supplies.

71.     Bassett requires Browning and the other Patient Care Employees to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care work.

72.     At the end of each pay period, Browning and the other Patient Care Employees receive wages from Bassett that are determined by common systems and methods that Bassett selects and controls.

73.     Bassett requires Browning and the other Patient Care Employees to record their hours worked using Bassett's timeclock system.

74.     Further, like Browning, Bassett subjects its other Patient Care Employees to a common policy and practice of automatically deducting time from their recorded hours worked for meal periods.

75.     Specifically, Bassett automatically deducts 30 minutes a day from Browning and the other Patient Care Employees' recorded work time and wages for so-called "meal breaks."

76.     Bassett automatically deducts this time regardless of whether Browning and the other Patient Care Employees actually received full, uninterrupted, 30-minute meal breaks.

77.     Bassett simply assumes Browning and the other Patient Care Employees receive *bona fide* meal breaks each shift they work.

78.     But, like Browning, the other Patient Care Employees do not actually receive *bona fide* meal breaks.

79.     Instead, like Browning, Bassett requires its other Patient Care Employees to remain on-duty and perform compensable work throughout their shifts.

80.     And, like Browning, Bassett continuously subjects its other Patient Care Employees to work interruptions during their unpaid meal periods.

81.     In fact, even when Browning and the other Patient Care Workers attempt to take a meal break, Bassett requires them to carry company-issued VOCERA phones so Bassett can immediately contact them at any time (including during their unpaid "meal breaks").

82.     Because of these constant work interruptions, Browning and the other Patient Care Employees are not free to engage in personal activities during their unpaid meal periods.

83.     Rather, during their unpaid "meal breaks," Browning and the other Patient Care Employees are necessarily forced to perform their regular patient care duties and responsibilities.

84.     Thus, Browning and the other Patient Care Employees routinely spend their unpaid "meal breaks" performing patient care work for Bassett's—not these employees'—predominant benefit.

85.     This unpaid time is compensable under the FLSA and/or NYLL because Bassett knew, or should have known, that (1) Browning and the other Patient Care Employees were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Bassett's premises or under Bassett's supervision during their unpaid "meal breaks," and/or (8) they spent their unpaid meal periods performing their regular patient care duties for Bassett's predominant benefit.

86.     Bassett fails to exercise its duty as Browning's and the other Patient Care Employees' employer to ensure they are not performing work that Bassett does not want performed during their unpaid "meal breaks."

87.     And Bassett knows Browning and the other Patient Care Employees routinely perform work "off the clock" during their unpaid meal breaks because Bassett expects and requires these employees to do so.

88.     In fact, Browning and the other Patient Care Employees repeatedly complained to Bassett's management and their supervisors about being forced to work during their unpaid "meal breaks."

89.     Thus, Bassett requested, suffered, permitted, or allowed Browning and the other Patient Care Employees to work during their unpaid "meal breaks."

90.     Despite accepting the benefits, Bassett does not pay Browning and the other Patient Care Employees for the compensable work they perform during their automatically deducted "meal breaks."

91.     Thus, under Bassett's uniform automatic meal break deduction policy, Browning and the other Patient Care Employees are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA and NYLL.

92.     Browning worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

93.     Likewise, each Patient Care Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

94.     Indeed, in each workweek throughout the relevant period, Browning and the other Patient Care Employees worked 12.5-hour shifts for at least 4 days each workweek (or at least 50 hours each workweek).

95.     And Browning and the other Patient Care Employees regularly are also required to work "off the clock" during their unpaid meal breaks to complete their patient care duties and responsibilities for Bassett's predominate benefit.

96.     As a result, Browning and the other Patient Care Employees routinely work in more than 40 hours in a typical workweek.

97.     When Browning and the other Patient Care Employees work more than 40 hours in a workweek, Bassett does not pay them overtime wages for all overtime hours worked because Bassett fails to include time these employees worked "off the clock" during their unpaid "meal breaks" in their total number of hours worked in a given workweek in willful violation of the FLSA and NYLL.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

98.     Browning incorporates all other paragraphs by reference.

99.     Like Browning, the other Patient Care Employees were victimized by Bassett's automatic meal break deduction policy.

100.    Other Patient Care Employees worked with Browning and indicated they were paid in the same manner, performed similar work, and were subject to Bassett's same automatic meal break deduction policy.

101.    Based on her experience with Bassett, Browning is aware Bassett's illegal automatic meal break deduction policy was imposed on the other Patient Care Employees.

102.    Browning and the other Patient Care Employees are similarly situated in most relevant respects.

103.    Even if their precise job duties might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay for all overtime hours worked.

104.    Therefore, the specific job titles of the various Patient Care Employees do not prevent class or collective treatment.

105.    Rather, the putative classes are held together by Bassett's uniform automatic meal break deduction policy, which systematically deprived Browning and the other Patient Care Employees of overtime wages for all hours worked over 40 in a workweek.

106.    Bassett's failure to pay overtime wages as required by the FLSA and NYLL results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Patient Care Employees.

107.    Bassett's records reflect the number of hours the Patient Care Employees recorded they worked each week.

108.    Bassett's records also show that it automatically deducted 30 minutes a day from the Patient Care Employees' recorded work time for meal breaks.

109.    The back wages owed to Browning and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

110.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Bassett's records, and there is no detraction from the common nucleus of liability facts.

111.    Therefore, the issue of damages does not preclude class or collective treatment.

112.    Browning's experiences are therefore typical of the experiences of the other Patient Care Employees.

113.    Browning has no interest contrary to, or in conflict with, the other Patient Care Employees that would prevent class or collective treatment.

114.    Like each Patient Care Employee, Browning has an interest in obtaining the unpaid wages owed to them under federal and New York law.

115.    Browning and her counsel will fairly and adequately represent the Patient Care Employees and their interests.

116.     Indeed, Browning retained counsel with significant experience in complex class and collective action litigation.

117.     A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

118.     Absent this class and collective action, many Patient Care Employees likely will not obtain redress for their injuries, and Bassett will reap the unjust benefits of violating the FLSA and NYLL.

119.     Further, even if some of the Patient Care Employees could afford individual litigation against Bassett, it would be unduly burdensome to the judicial system.

120.     Indeed, the multiplicity of actions would create a hardship to the Patient Care Employees, the Court, and Bassett.

121.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

122.     The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

123.     Among the common questions of law and fact are:

    a.     Whether Bassett engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

    b.     Whether Bassett's automatic meal break deduction policy deprived the Patient Care Employees of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

c.    Whether Bassett knew, or had reason to know, its Patient Care Employees were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal breaks" in violation of the FLSA and NYLL;

d.    Whether Bassett failed to pay its Patient Care Employees overtime wages for all hours worked over 40 in a workweek, including those worked "off the clock" during their unpaid "meal breaks," in violation of the FLSA and NYLL;

e.    Whether Bassett's decision not to pay its Patient Care Employees overtime wages for all overtime hours worked was made in good faith; and

f.    Whether Bassett's FLSA and NYLL violations were willful.

124.   Browning knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

125.   As part of its regular business practices, Bassett intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to the Patient Care Employees.

126.   Bassett's illegal meal break deduction policy deprived Browning and the other Patient Care Employees of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal and New York law.

127.   There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

128.   Those similarly situated employees are known to Bassett, are readily identifiable, and can be located through Bassett's business and personnel records.

### BASSETT'S WAGE VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA AND NYLL

129.   Browning incorporates all other paragraphs by reference.

130.   Bassett knew it was subject to the FLSA's and NYLL's respective overtime provisions.

131.     Bassett knew the FLSA and NYLL required it to pay non-exempt employees, including Browning and the other Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

132.     Bassett knew Browning and the other Patient Care Employees were non-exempt employees entitled to overtime pay.

133.     Bassett knew it paid Browning and the other Patient Care Employees on an hourly basis.

134.     Bassett knew Browning and each Patient Care Employee worked over 40 hours in at least one workweek during the 3 years before this Complaint was filed because Bassett required these employees to record their hours worked using its timeclock system.

135.     Bassett knew the FLSA and NYLL required it to pay employees, including Browning and the other Patient Care Employees, for all hours they performed compensable work.

136.     Bassett knew that, as Browning's and the other Patient Care Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Bassett did not want performed.

137.     Bassett knew it failed to provide Browning and the other Patient Care Employees with *bona fide*, uninterrupted meal breaks.

138.     Bassett knew Browning and the other Patient Care Employees did not actually receive *bona fide*, uninterrupted meal breaks.

139.     Bassett knew Browning and the other Patient Care Employees regularly worked during their unpaid meal breaks.

140.     Bassett knew it requested, suffered, permitted, or allowed Browning and the other Patient Care Employees to work during their unpaid meal breaks.

141.    Bassett knew Browning and the other Patient Care Employees regularly spent their unpaid "meal breaks" performing their regular patient care duties for Bassett's predominant benefit.

142.    Indeed, Browning and the other Patient Care Employees complained to Bassett's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

143.    Thus, Bassett knew, should have known, or recklessly disregarded whether Browning and the other Patient Care Employees performed compensable work during their unpaid meal breaks.

144.    Nonetheless, Bassett automatically deducted 30 minutes a day from Browning's and the other Patient Care Employees' recorded work time (and wages) for meal breaks.

145.    In other words, Bassett knew, should have known, or recklessly disregarded whether it did not pay Browning and the other Patient Care Employees for all the hours they performed compensable work.

146.    Bassett's decision to automatically deduct 30 minutes a day from Browning's and the other Patient Care Employees' recorded work time for meal breaks was neither reasonable, nor was it made in good faith.

147.    Bassett's failure to pay Browning and the other Patient Care Employees overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

148.    Bassett knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA and NYLL.

149.    Bassett knowingly, willfully, and/or in reckless disregard carried out its illegal automatic meal break deduction policy that deprived Browning and the other Patient Care Employees of overtime wages for all hours worked over 40 in a workweek in violation of the FLSA and NYLL.

150.    Indeed, Bassett has been sued previously by employees for failing to pay overtime wages in violation of the FLSA and New York law, including for the same illegal auto-deduct meal break policy. *See, e.g., Willoughby v. Bassett Healthcare Network*, No. 1:23-CV-00791-LEK-DJS (N.D.N.Y.).

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
(FLSA COLLECTIVE)**

151.    Browning incorporates all other paragraphs by reference.

152.    Browning brings her FLSA claim on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

153.    Bassett violated, and is violating, the FLSA by employing non-exempt employees (Browning and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid "meal breaks."

154.    Bassett's unlawful conduct harmed Browning and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

155.    Accordingly, Bassett owes Browning and the other FLSA Collective Members the difference between the overtime wages paid and the overtime wages they actually earned.

156.    Because Bassett knew, or showed reckless disregard for whether, its automatic meal break deduction policy violated the FLSA, Bassett owes these wages for at least the past 3 years.

157.    Bassett is also liable to Browning and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

158.    Finally, Browning and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

<u>C<small>OUNT</small> II</u>

F<small>AILURE TO</small> P<small>AY</small> O<small>VERTIME</small> W<small>AGES</small> U<small>NDER THE</small> **NYLL**
**(N<small>EW</small> Y<small>ORK</small> C<small>LASS</small>)**

159.     Browning incorporates all other paragraphs by reference.

160.     Browning brings her NYLL claim on behalf of herself and the other New York Class Members pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 23.

161.     The conduct alleged violates the NYLL and its implementing regulations, N.Y. L<small>AB</small>. L<small>AW</small> §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

162.     At all relevant times, Bassett was subject to the NYLL because Bassett was an "employer" within the meaning of the NYLL. *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190(3) and 651(6).

163.     At all relevant times, Bassett employed Browning and the other New York Class Members as covered "employees" within the meaning of the NYLL. *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190(2) and 651(5).

164.     The NYLL requires employers, like Bassett, to pay employees, including Browning and the other New York Class Members, overtime wages at rates not less than 1.5 their regular rates of pay for all hours worked after 40 in a workweek. *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

165.     Browning and the other New York Class Members are entitled to overtime pay under the NYLL.

166.     Bassett violated, and is violating, the NYLL by failing to pay Browning and the other New York Class Members overtime wages at rates not less than 1.5 times their regular rates for all hours worked after 40 in a workweek, including those hours worked during these employees' unpaid "meal breaks." *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

167.    Bassett's unlawful conduct harmed Browning and the other New York Class Members by depriving them of the overtime wages they are owed.

168.    Bassett's NYLL violations with respect to Browning and the other New York Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* N.Y. LAB. LAW § 198.

169.    Accordingly, Browning and the other New York Class Members are entitled to recover their unpaid overtime compensation under the NYLL in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as interest, penalties, and attorney's fees and costs. *See* N.Y. LAB. LAW §§ 198(4) and 663(1).

## JURY DEMAND

170.    Browning demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Browning, individually and on behalf of the other Patient Care Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Browning and her counsel to represent the interests of the FLSA Collective and New York Class;

d.    An Order finding Bassett liable to Browning and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA, plus liquidated damages in amount equal to their unpaid overtime wages;

e.   An Order finding Bassett liable to Browning and the other New York Class Members for unpaid overtime wages owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages, as well as penalties;

f.   Judgment awarding Browning and the other Patient Care Employees all unpaid wages, liquidated damages, and any other penalties available under the FLSA and NYLL;

g.   An Order awarding attorney's fees, costs, and expenses;

h.   Pre- and post-judgment interest at the highest applicable rates; and

i.   Such other and further relief as may be necessary and appropriate.

Dated: December 1, 2023.                    Respectfully submitted,

                                            E. STEWART JONES HACKER MURPHY, LLP

                                            By: /s/ David I. Iversen
                                                    David I. Iversen, Esq.
                                                    NY Bar No. 519342
                                            28 Second Street
                                            Troy, New York 12180
                                            Phone: 518-274-5820
                                            Fax:     518-274-5875
                                            diversen@joneshacker.com
                                            *Local Counsel for Plaintiff*

                                            Michael A. Josephson*
                                            Andrew W. Dunlap*
                                            JOSEPHSON DUNLAP LLP
                                            11 Greenway Plaza, Suite 3050
                                            Houston, Texas 77046
                                            Phone: 713-352-1100
                                            Fax:     713-352-3300
                                            mjosephson@mybackwages.com
                                            adunlap@mybackwages.com

                                            Richard J. (Rex) Burch*
                                            BRUCKNER BURCH PLLC
                                            11 Greenway Plaza, Suite 3025
                                            Houston, Texas 77046
                                            Phone: 713-877-8788
                                            Fax:     713-877-8065
                                            rburch@brucknerburch.com

                                            William C. (Clif) Alexander*
                                            Austin W. Anderson*
                                            ANDERSON ALEXANDER PLLC
                                            101 N. Shoreline Blvd., Suite 610
                                            Corpus Christi, Texas 78401
                                            Phone: 361-452-1279
                                            Fax:     361-452-1284
                                            clif@a2xlaw.com
                                            austin@a2xlaw.com

                                            *Pro hac vice applications forthcoming*

                                            ATTORNEYS BROWNING AND
                                            THE PATIENT CARE EMPLOYEES